DAVIS, Circuit Judge,
concurring:
I am pleased to concur in the fine opinion of my good colleague. I write separately to elaborate my view of one issue, namely, the appropriate test for identifying and assessing in First Amendment cases the existence of “a state interest of the highest order.”
When evaluating whether a state’s asserted interest rises to the level shared by those of “the highest order,” courts must consider and weigh heavily the state’s expressed views and its conduct or they risk denuding First Amendment rights. In Florida Star v. B.J.F., 491 U.S. 524, 537-38, 109 S.Ct. 2603, 105 L.Ed.2d 443 (1989), the Court explained that Florida’s statute failed to further a state interest of the highest order for three reasons, the first of which was that the appellant obtained the identifying information in question from the government in consequence of official mishandling of the information. Id. at 538, 109 S.Ct. 2603. This factor, combined with the breadth and facial underinclusiveness of Florida’s statute, led the Court to find “no such interest is satisfactorily served by imposing liability under [the statute] to appellant under the facts of this case.” Id. at 541, 109 S.Ct. 2603.
Considering a state’s view and its actual conduct is particularly important in First Amendment cases like this one, in which the Commonwealth, a party to the case, undertakes to punish an individual for republishing information initially published by the Commonwealth itself. In such cases, courts should not casually treat a “state interest of the highest order” synonymously with a judicially-noticeable, constitutionally-rooted, “compelling governmental interest,” such as the eradication of racial discrimination. See Maj. Op. at 277. *291 Rather, the state’s dual role as publisher and re-publication punisher necessitates a more searching analysis of its involvement. For this reason, while I agree with the observation in the majority opinion that certain evolving “practices indicate a broad consensus that SSNs’ public disclosure should be strictly curtailed,” Maj. Op. at 280, where, as here, an individual state has not manifested its genuine embrace of that “consensus,” then judicially-noticed facts do not trump the state’s tangible actions, nor can they render the state’s behavior an unimportant or minor aspect of the proper analysis.
Thus, an analysis of a state’s view and its actual conduct in furthering its asserted interest is imperative in striking the proper balance, under the First Amendment, between pursuit of “a state interest of the highest order,” on the one hand, and, on the other hand, the state’s efforts to restrict the exercise of constitutionally-protected expressive activity. This is not to say that “objective” data have no role to play in the analysis of a federal court’s assessment of whether an asserted state interest rises to become one “of the highest order.” See Maj. Op. at 277. But such a consideration should not, and must not, supplant a fact-intensive inquiry into the state’s view and its actual conduct in furthering its asserted interest.*
In sum, when a state seeks to punish a speaker for republishing state-published information, the state should be expected, in the words of a contemporary colloquialism, not simply to talk the talk, but to walk the walk, as well. The district court did not err in so concluding here.

 Butterworth v. Smith, 494 U.S. 624, 110 S.Ct. 1376, 108 L.Ed.2d 572 (1990), is not to the contrary. There, the Supreme Court held unconstitutional a Florida statute that prohibited a writer's disclosure of his own grand jury testimony. Id. at 626, 110 S.Ct. 1376. In so holding, the Court considered whether other states maintain such a rule and whether the Federal Rules prohibited the writer’s actions. Id. at 634-35, 110 S.Ct. 1376. But of course, in Butterworth, the state never had control of the information in question: the writer’s testimony. Thus, the Court had scant reason to consider the actions of the state in safeguarding the information because the state never controlled the information in the first place.